**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Michael Muolo, being sworn, state:

**Introduction and Agent Background**

1. I am a Police Detective in the Reading Police Department and have been assigned as a task force officer ("TFO") with the Federal Bureau of Investigation ("FBI") since October 2019. I am currently assigned to the Boston Field Office, Organized Crime Drug Enforcement Task Force ("OCDETF") Strike Force.

2. Prior to my current assignment as an FBI TFO, I was assigned as the Narcotics Detective in the Town of Reading and as a member of the Southern Middlesex Regional Drug Task Force. I graduated from the Transit Police Academy in 2012 where I was trained in criminal law, constitutional law, criminal investigations, motor vehicle law, and narcotics. I have completed specialized training in drug enforcement, including an eight-day school administered by the Municipal Police Institute on Street Level Narcotics Investigations. I have competed Massachusetts Top Gun Undercover Narcotics Investigators and Prosecutors Training Course and have also attended the two-week Criminal Investigations School. I have attended several Middlesex District Attorney's Office trainings on narcotics investigations and identification.

3. During my career in law enforcement, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug trafficking conspiracies. In the course of conducting criminal investigations, I have employed the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-term narcotics investigations; consensual monitoring and recording of both telephonic and non-

telephonic communications; analyzing telephone pen register and toll record data; conducting court-authorized electronic surveillance; and preparing and executing search warrants that resulted in substantial seizures of narcotics, firearms, and other contraband.

## Purpose of the Affidavit

4. I make this affidavit in support of an application for a criminal complaint charging Eric ENCARNACION with distribution and possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi) (the "Charged Offense").

5. Based on the facts set forth in this affidavit, there is probable cause to believe that ENCARNACION committed the Charged Offense.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, among other things. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## Probable Cause

*Investigation Background*

7. From August 2019, through April 2020, investigators gathered evidence on the subjects of a federal drug and money laundering investigation through a variety of methods, including consensually recorded phone calls and preserved text messages, telephone calls and text messages intercepted pursuant to court orders authorizing the interception of wire and electronic communications, surveilled meetings between the subjects, confidential sources for the government, and other individuals involved in laundering drug proceeds, subpoenas to financial entities, and other investigative techniques. Through that investigation, investigators

learned that a drug dealer based in the Dominican Republic (hereinafter, the "Dominican Target"),[1] was shipping and facilitating the shipment of ketamine, fentanyl, and heroin to the United States from the Dominican Republic and Mexico through the U.S. Postal Service and associates in the United States.

8.  Throughout that investigation, the Dominican Target regularly communicated with a cooperating witness who is in a position to testify (hereinafter, "CW-1")[2] via recorded Spanish language phone calls, text messages, and WhatsApp messages for the purpose of arranging drug shipments to Massachusetts. The investigation led to seizures of kilogram quantities of ketamine, heroin, and fentanyl and the arrest and identification of the Dominican Target's associates.

*ENCARNACION and the Dominican Target Arranged for the Delivery of One Kilogram of Suspected Fentanyl to CW-1.*

9.  On January 22, 2021, the Dominican Target and CW-1 exchanged voice messages via WhatsApp for the purpose of arranging a sale of fentanyl to CW-1 in Massachusetts. These

---

[1] Investigators know the true identity of Dominican Target but have not included it in this affidavit because public disclosure may jeopardize future investigations.

[2] CW-1 is a documented source of information who has cooperated with the Drug Enforcement Administration ("DEA"), the FBI, and the Quincy, Massachusetts Police Department in the past. CW-1 has a criminal record that includes multiple arrests for drug distribution offenses and for threatening, and at least one arrest for possessing a controlled substance in a school zone or park. CW-1's criminal record also includes convictions for possessing a Class A substance with intent to distribute it (two convictions, at least one of which was for heroin), for possessing a Class D controlled substance (marijuana) with intent to distribute it, and for conspiracy to violate the Controlled Substances Act. CW-1 first began to cooperate with law enforcement after being approached by officers as a potential target of a drug distribution investigation being conducted by the DEA. Ultimately, CW-1 was not charged in that case. CW-1 has been cooperating with the FBI for approximately two years. The FBI has compensated CW-1 financially in exchange for CW-1's cooperation and provided CW-1 with immigration benefits to allow him to continue assisting the FBI. CW-1 has provided information that has been corroborated and that has led to seizures of narcotics and drug related arrests. Information provided by CW-1 is believed to be reliable.

messages were preserved.[3]  In lightly coded language, the Dominican Target told CW-1 that the Dominican Target had shipped multiple kilograms of fentanyl to Pennsylvania and asked CW-1 if he was interested in purchasing it.  The Dominican Target stated that he had associates, a male and a female, in New York who would drive to Pennsylvania, pick up the drugs, and transport them back to New York or Boston for CW-1 to purchase.  The Dominican Target informed CW-1 that the price would be $41,000 for one kilogram of fentanyl if CW-1 picked up the drugs in New York, or $44,000 if CW-1 picked up the drugs in Boston.  At the instruction of investigators, CW-1 replied that he was waiting on receiving some additional money and would contact the Dominican Target once he was ready to make the purchase.

10.  On January 24, 2021, the Dominican Target and CW-1 exchanged messages via WhatsApp voice message.  These messages were preserved.  In lightly coded language, the Dominican Target informed CW-1 that there were four kilograms of suspected fentanyl available for CW-1 to purchase.  CW-1 stated that he still did not have the money ready and asked the Dominican Target if he could purchase one kilogram on credit.  The Dominican Target then suggested that CW-1 make a partial down payment.  The Dominican Target and CW-1 negotiated the partial down payment and CW-1 agreed to pay $5,000 upon receipt of the drugs.

---

[3] Based on my experience and training, I know that WhatsApp is an encrypted messaging service in which users can exchange voice and text messages and have live voice conversations.  All conversations between the Dominican Target, ENCARNACION, and CW-1 were in Spanish.  The substance of each conversation was recounted to investigators by CW-1.  The recordings have been sent out for translation.

CW-1 agreed to pay the rest at a later date. CW-1 then told the Dominican Target that he would let him know once he had the $5,000 ready for payment.

11.  On January 27, 2021, the Dominican Target and CW-1 exchanged voice messages via WhatsApp. These messages were preserved. CW-1 stated that he had collected the $5,000 and was prepared to receive the one-kilogram delivery of fentanyl. The Dominican Target told CW-1 to send $1,500 via a money transfer application. CW-1 refused, but agreed to increase the down payment to $6,000 once the drugs were delivered. CW-1 provided the meeting address to the Dominican Target: 18 Quimby Street, Watertown, Massachusetts. The Dominican Target stated that he would call CW-1 when his associates were on their way with the drugs.

12.  On January 28, 2021, the Dominican Target and CW-1 exchanged voice messages via WhatsApp. These messages were preserved. At approximately 3:40 p.m., the Dominican Target told CW-1 that his associates were on their way to Boston and would arrive around 9:00 p.m. At approximately 7:20 p.m., the Dominican Target stated that his associates would arrive in the next hour. CW-1 requested a phone number for the Dominican Target's associates, but the Dominican Target declined to provide it.

*ENCARNACION Delivers Approximately One Kilogram of Suspected Fentanyl to CW-1.*

13.  At approximately 8:20 p.m., investigators met with CW-1 at a predetermined location. Investigators searched CW-1's person and vehicle for contraband and currency with negative results and equipped CW-1 with an audio / video recording device. Investigators also provided CW-1 with $6,000 in Official Authorized Funds ("OAF"). At approximately 9:10 p.m., the Dominican Target sent a WhatsApp voice message to CW-1 and informed CW-1 that his associates were approximately 15 minutes away from the meeting location. This message was preserved. At approximately 9:25 p.m., the Dominican Target sent CW-1 a WhatsApp text

message with the phone number for "Erik," (646) 250-6895, (hereinafter the "Erik Phone"). This text message is preserved.

14. At approximately 9:35 p.m., CW-1 sent a WhatsApp text message to the Erik Phone and provided the new location for the drug deal: 550 Arsenal Street, Watertown, Massachusetts. This text message is preserved. Under investigators' surveillance, CW-1 departed the predetermined meeting location, and at approximately 9:39 p.m., CW-1 arrived at the meeting location for the drug pickup.

15. At approximately 9:41 p.m., investigators observed a male driver[4] and female passenger ("UF") arrive at the meeting location in a 2010 Acura MDX and circle the parking lot. At that time, CW-1 received a WhatsApp voice call from ENCARNACION on the Erik Phone, in which ENCARNACION stated that he was in the parking lot of the meeting site and was looking for CW-1. This call was recorded.

16. A short time later, ENCARNACION and UF pulled up and parked their vehicle next to CW-1's vehicle. Investigators maintained surveillance on CW-1, ENCARNACION, UF, and their vehicles. At approximately 9:46 p.m., ENCARNACION exited his vehicle and retrieved a UPS box from the trunk of his vehicle. ENCARNACION then entered CW-1's vehicle. Inside CW-1's vehicle, ENCARNACION took a kilogram of suspected fentanyl out of the UPS package and passed it to CW-1. ENCARNACION then took a photograph of the suspected fentanyl. CW-1 then handed ENCARNACION the OAF in a brown bag. ENCARNACION removed the cash from the bag, examined it, and placed it back in the bag.

---

[4] As described below, the man was later identified via a traffic stop as ENCARNACION. I will refer to him as ENCARNACION for the remainder of this affidavit.

ENCARNACION stated that he had a side business selling blue M/30 pills and would be willing to sell pills to CW-1. ENCARNACION also stated that the Erik Phone was the best number to reach him.

17. ENCARNACION then exited CW-1's vehicle holding the brown paper bag containing the OAF and got back into his vehicle. ENCARNACION and UF departed the meeting location in their vehicle. CW-1 then drove back to the predetermined location to meet with investigators. Investigators maintained surveillance of CW-1 while he drove back to the predetermined location.

18. Once back at the predetermined location, CW-1 turned over the suspected fentanyl to investigators. Investigators searched CW-1's person and vehicle for contraband and currency with negative results and removed the audio / video recording device. While at the predetermined location, the Dominican Target called CW-1 via WhatsApp and confirmed that CW-1 had received the drugs. This call was recorded.

19. Investigators conducted a field test of the suspected fentanyl and it yielded an inconclusive result. However, based on my training and experience, the physical appearance of the substance, and the price, I believe the substance to be fentanyl, and to weigh approximately one kilogram.

*Investigators Identify ENCARNACION*

20. A short time after leaving the meeting site, ENCARNACION pulled his vehicle over, exited the vehicle, and began looking through the front seat and back seat. At that time,

investigators in a marked police vehicle pulled behind ENCARNACION's stopped vehicle and activated their emergency lights because he was stopped in the street.

21. Investigators approached the vehicle and asked for identification. ENCARNACION provided a Dominican identification card which identified him as "Eric Eliezer Encarnacion Medina, DOB: \*\*/\*\*/1987. Investigators then departed the location. ENCARNACION and UF then drove away from the scene.

## Conclusion

22. Based upon the evidence set forth above, as well as my knowledge, training and experience, I submit that there is probable cause to believe that ENCARNACION committed the Charged Offense.

Respectfully submitted,

/s/ Michael Muolo
_____
Michael Muolo, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 in Boston, Massachusetts on February 12, 2021.

_____
Hon. M. Page Kelley
Chief United States Magistrate Judge