UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC ENCARNACION MEDINA, | ) | Case No. 21-cr-10113-ADB |
| | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

In January 2021, the defendant Eric Encarnacion was introduced to a cooperating witness for the government (the "CW") as a man who would transport fentanyl from Pennsylvania to Massachusetts on behalf of a Dominican drug trafficker.  The Dominican drug trafficker stated that he had shipped multiple kilograms of fentanyl to a location in Pennsylvania.  On January 28, 2021, Encarnacion and the CW made contact and finalized the location for the drug transaction. When Encarnacion arrived at the meeting spot, a parking lot in Watertown, Encarnacion got into the CW's vehicle and handed him a box containing one kilogram of fentanyl.  The two discussed future drug sales, and afterwards, Encarnacion departed and drove back to New York.  On February 11, 2021, the CW spoke with Encarnacion and the defendant agreed to bring up 400 pills to Boston.  They discussed future deals and the potential for transactions involving high quantities of fentanyl pills and methamphetamine.  On February 12, 2021, Encarnacion drove up from New York, and when he arrived in the Boston area, after several turnarounds and false starts, investigators arrested him.

On April 7, 2021, a federal grand jury returned an Indictment charging the defendant with one count of conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846, and one count of distribution of and possession with

intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi).  Docket No. 13.  On November 9, 2021, the defendant pled guilty to the two counts in the Indictment.  Docket No. 27.  Counts One and Two provide for ten-year mandatory-minimum sentence.  The defendant, however, has met all criteria under 18 U.S.C. § 3553(f), and therefore, this Court may sentence the defendant for those counts pursuant to the Sentencing Guidelines without regard to the statutory mandatory minimum sentences.  After appropriate reductions, the applicable Guidelines Sentencing Range ("GSR") is 78 – 97 months' imprisonment and two – five years of supervised release.  There is no plea agreement in this case.

The government recommends a sentence of imprisonment of 63 months.  As explained below, this recommendation is a downward variance below the GSR due to the discrepancy between the updated criteria established by the First Step Act and the current unamended Guidelines.  The government recommends a term of supervised release of three years to follow imprisonment.

## I.    ADVISORY SENTENCING GUIDELINES

The Presentence Report prepared by the United States Probation Office ("USPO"), ("PSR"), found that the defendant was accountable for 1,124 grams of fentanyl.  PSR ¶ 25.  The defendant's base offense level for that quantity of drugs is 30.  *Id.*  His offense level was reduced three levels given the defendant's timely acceptance of responsibility.  PSR ¶¶ 32-33.  Although the defendant has met all statutory criteria under 18 U.S.C. § 3553(f), because the Sentencing Guidelines have not been amended to reflect the statutory changes under the First Step Act, the defendant's offense level is not reduced by another two levels, pursuant to U.S.S.G. §§ 2D1.1(b)(18) & 5C1.2(a).  PSR ¶ 85.  The defendant has a total criminal history score of two,

which places him in Criminal History Category II.  PSR ¶¶ 38-39.  The defendant's advisory

GSR is 78 – 97 months' imprisonment and two to five years of supervised release.  PSR ¶¶ 65,

69.  If the Guidelines had been amended to conform with the statute, and the defendant given the

two-level reduction to his total offense level, the defendant would have a total offense level of

25, CHC II, and an advisory GSR of 63 – 78 months.  The government agrees with the USPO's

calculation of the GSR.

## II.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Consideration of the § 3553(a) factors demonstrates that a sentence of 63 months'

imprisonment and three years of supervised release is sufficient, but not greater than necessary,

to meet the goals of sentencing.

### A.     Nature of the Offense

The defendant transported a substantial amount of fentanyl, one kilogram, from

Pennsylvania to Massachusetts to sell it to the CW in this case.  Moreover, after this initial sale,

the defendant discussed an additional sale of fentanyl pills and potentially larger quantities of

methamphetamine.  This Court is well aware that fentanyl is a deadly drug that has wreaked

havoc in the United States, and more specifically in Massachusetts, over the past several years.

Fentanyl remains the primary driver behind the ongoing opioid crisis, with fentanyl involved in

more overdose deaths than any other illicit drug.[1]  "Nearly 70 percent of all drug overdose deaths

in the United States in 2018 involved an opioid.  Deaths involving synthetic opioids other than

methadone—the category which includes fentanyl—increased by 10 percent according to data

---

[1] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/documents/2021/03/02/2020-national-drug-threat-assessment#:~:text=The%202020%20National%20Drug%20Threat%20Assessment%20%28NDTA%29%20is,laun dering%20of%20proceeds%20generated%20through%20illicit%20drug%20sales., at 7 (last visited May 4, 2022) (hereinafter "DEA 2020 Assessment").

provided by the Centers for Disease Control and Prevention (CDC)."[2]  "Fentanyl use and overdose deaths are more widespread across the country as the opioid crisis continues.  Overall, fentanyl-involved deaths are still the most concentrated in states in the Great Lakes and Northeast of the United States."[3]

Massachusetts has been one of the states hardest hit by the opioid crisis and was among the top five states with the most fentanyl reports in 2019.[4]  In 2018, about 88% of drug overdose deaths in Massachusetts involved at least one opioid.[5]  These statistics are not hypothetical – they describe the opioid overdose crisis occurring right now in this district.  The epidemic is real and being felt every day by families across Massachusetts and New England.  The defendant's crimes played a role in fueling this epidemic, and there is no telling the damage one kilogram of fentanyl could have caused if not intercepted by law enforcement agents, nor the damage additional fentanyl pills and methamphetamine could have done in the community.  The nature of this offense requires a significant sentence of imprisonment.

**B.  Avoiding Sentencing Disparities**

The defendant is accountable for 1,124 grams of fentanyl.  PSR ¶ 25. The defendant's base offense level for that quantity of drugs is 30, but if he had sold just 76 grams of fentanyl more, the defendant's base offense level would have been 32, and his adjusted GSR (with a two-level downward variance) would have been 78 – 97 months.  U.S.S.G. § 2D1.1(c)(4).  The Sentencing Guidelines must draw lines with respect to drug weights and offense levels, and line drawing inevitably leads to results in which some defendants fall above and some fall below

---

[2] *Id.*
[3] *Id.* at 12.
[4] *Id.* at 8.
[5] National Institute on Drug Abuse, *Opioid-Related Overdose Deaths* (Revised April 2020), available at www.drugabuse.gov/drugs-abuse/opioids/opioid-summaries-by-state/massachusetts-opioid-summary (last visited on January 19, 2022).

those lines by narrow margins.  In this case, the defendant's drug weight fell just below the line, but his drug weight is much closer to the 1.2 kilograms necessary for a base offense level of 32, than it is to 400 grams, the low-end drug weight for base offense level 30.  The government is not arguing for an upward variance, but it is relevant that the defendant's drug weight fell just under the threshold for a higher GSR in which 78 months would be the low end.  For these reasons, 63 months' imprisonment, a sentence still within the defendant's GSR with a downward variance, is a fair sentence which takes into account the drug weight in this case and the potential harm that weight of fentanyl could have inflicted on the community had it not been intercepted by investigators.  At the very least, this drug weight on the upper limits of the range for his base offense level cuts strongly against providing any further downward departure under the guidelines or variance under 18 U.S.C. § 3553(a).

### C.  Specific and General Deterrence and Protection of the Public

A significant sentence of imprisonment is warranted to deter others from becoming involved in any way, role, or capacity in the trafficking of fentanyl as the dangers associated with this deadly drug cannot be overstated.  Individuals tempted to engage in drug trafficking must understand that *any* involvement with fentanyl, no matter how minimal, will have immediate and serious consequences.  Imprisonment is necessary to send a strong warning to others who might otherwise consider possessing or distributing these dangerous drugs.

Considerations of specific deterrence also support the imposition of a sentence of 63 months' imprisonment.  Unlike many defendants who come before this Court, the defendant is a legal permanent resident of the United States and did not have the usual barriers to lawful employment that exist for many drug defendants in federal court.  PSR ¶ 45.  Additionally, the defendant graduated high school, had one year of college, and is a certified chef.  PSR ¶¶ 53-54.

The defendant was able to maintain relatively steady employment for the years leading up to his current incarceration.  PSR ¶¶ 56-59.  Finally, the defendant himself does not suffer from drug addiction, PSR ¶ 52, so this was not a case of a drug dealer selling drugs to feed his own addiction.  Despite his legal status, education, training, steady employment, and freedom from any drug addiction, the defendant still chose to sell fentanyl and appeared eager and ready to sell fentanyl pills and methamphetamine prior to his arrest.  He did so solely to make money.  Given the existence of other opportunities, this Court should impose a significant term of imprisonment to deter this defendant from ever again engaging in drug trafficking.

### III.    CONCLUSION

The government's sentencing recommendation takes into account the various factors set forth in § 3553(a) and the Sentencing Guidelines.  The United States believes a sentence of 63 months' imprisonment and three years of supervised release is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

May 5, 2022                                    Respectfully submitted,

                                               RACHAEL S. ROLLINS,
                                               United States Attorney

                              By:    /s/ Stephen W. Hassink
                                     Stephen W. Hassink
                                     Assistant U.S. Attorney


                          CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served this sentencing memorandum on all appropriate parties through electronic filing via ECF on May 5, 2022.

                                     /s/ Stephen W. Hassink
                                     Stephen W. Hassink
                                     Assistant U.S. Attorney